WILLIAM R. (BOB) WILSON AND LINDA F. WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 7199-70.
United States Tax Court
T.C. Memo 1973-92; 1973 Tax Ct. Memo LEXIS 195; 32 T.C.M. (CCH) 407; T.C.M. (RIA) 73092; April 18, 1973, Filed Harold H. Newman, for the petitioners. Ronald A. Wagenheim, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' Federal income tax liability for the taxable years 1966 and 1967 in the amounts of $10,290.03 and $8,636.59, respectively. The questions presented for our consideration are as follows: (1) Whether purported travel, entertainment, and gift expenses claimed by petitioners for the taxable years 1966 and 1967 constituted ordinary and necessary business 2 expenses deductible under section 162 of the Internal Revenue Code of 1954; [1] (2) whether petitioners have satisfied the substantiation requirements of section 274 with respect to the travel, entertainment, and gift expenses purportedly sustained in the taxable years 1966 and 1967; and (3) whether petitioners are entitled to deductions under section 162 for purported wardrobe, wardrobe maintenance, cosmetics, beauty parlor, music, publicity, and telephone expenses claimed by them for the taxable years 1966 and 1967. *197 FINDINGS OF FACT Some of the facts have been stipulated; the stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, William R. (Bob) Wilson (hereinafter referred to as Bob) and Linda F. Wilson (hereinafter referred to as Linda) filed a joint Federal income tax return for the taxable year 1966 with the district director of internal revenue, Manhattan, New York. Petitioners filed a joint Federal income tax return for the taxable year 1967 with the Internal Revenue Service, North Atlantic Service Center, Andover, Massachusetts. Petitioners' legal residence on November 19, 1970, the date of the filing of the petition herein, was New York, New York. 3 During the taxable years 1966 and 1967, Bob was a news correspondent on radio and television for the National Broadcasting Company, Inc. (N.B.C.). Bob did not have a written contract with N.B.C. for the years 1966 and 1967. He was compensated on a union scale basis for the broadcasts rendered by him during each of the years in issue. Bob's total compensation from N.B.C. in 1966 and 1967 was $67,401.69 and $42,972.04, respectively. In addition to his association with *198 N.B.C., Bob participated in the production of training films for the Army Signal Corps in 1966 and 1967. He received compensation for these services in the amounts of $1,571.76 in 1966 and $1,300 in 1967. During the years in issue, Linda was an actress-entertainer. She received compensation in the amounts of $3,915.55 in 1966 and $4,659.09 in 1967. Petitioners maintained two sets of diaries with respect to the taxable years in issue. These diaries (hereinafter sometimes referred to as diary set I and diary set II) were offered by petitioners as substantiation for their claimed travel and entertainment expenses. Diary set I consisted of four separate books, each of which covered a specific six-month time interval during either 1966 or 1967. Diary set I was presented to the examining revenue agent by petitioners' counsel of record. 4 Petitioners' attorney represented to the revenue agent that diary set I was not petitioners' original diaries for 1966 and 1967. Petitioners' attorney reiterated this representation to appellate conferee Joseph McQuade at a conference held on June 2, 1971. Petitioners' attorney further represented to McQuade at this conference that petitioners' *199 original diaries for the years in issue were illegible and that diary set I was copied from the ostensibly illegible original diaries to facilitate the revenue agent's examination. Subsequent to June 2, 1971, petitioners' attorney forwarded diary set II to McQuade and represented to McQuade that diary set II contained petitioners' original diaries for the involved taxable years. Diary set II consisted of two separate books, with one book pertaining to taxable year 1966 and the other pertaining to taxable year 1967. Contrary to representations of petitioners' attorney prior to trial, Bob testified at trial that diary set I contained the original diaries for 1966 and 1967 and that diary set II was copied from diary set I. He further testified that diary set II was prepared only after he was informed by petitioners' attorney that diary set I was neither adequate nor acceptable for substantiation purposes. Diary set I was not prepared by Bob, but was apparently prepared by a William Reynolds. The segment of diary set I pertaining to the taxable year 1966 was prepared sometime between 5 the early and middle parts of 1967, and the segment of diary set I pertaining to the taxable *200 year 1967 was prepared sometime between the early and middle parts of 1968. Diary set II was not prepared until 1970 or later, and was prepared only pursuant to advice of petitioners' attorney to petitioners that diary set I was neither adequate nor acceptable for substantiation purposes. The entries in diary set I are identical in all material respects to the entries contained in diary set II. Petitioners' diaries reflect that petitioners expended the following total amounts for business entertainment in the years in issue: Bob
1966
1967 Breakfast
$29.10
$19.60
Lunch
179.20
-
Dinner
6,561.40
6,663.35
Other
-
-
Linda
Breakfast
$ -
$ -
Lunch
87.30
-
Dinner
6,063.00
6,197.70
Other
22.00
-
Petitioners' diaries further reflect that petitioners expended $11,093 in 1966 and $11,219.75 in 1967 for house parties, $1,480.90 in 1966 and $1,469.85 in 1967 for taxis, and $346 in 1966 and $345.40 in 1967 for outside telephone expenses. Petitioners' diaries contain a substantial number of 6 blatant and egregious inaccuracies. Bob was in Puerto Rico from October 26, 1966, through November 1, 1966. Petitioners' diaries are devoid *201 of any recordation of Bob's trip to Puerto Rico during this time period. To the contrary, petitioners' diaries reflect that Bob sustained entertainment expenses at the following places: Date reflected in diaries
Place of entertainment reflected in diaries October 26, 1966
Colony Restaurant, New York City
October 27, 1966
Pete's Restaurant, New York City
October 28, 1966
Hilton Hotel, New York City
October 29, 1966
House party, New York City
October 31, 1966
Colongy Restaurant, New York City
November 1, 1966
Pierre's Restaurant, New York City
In addition, Linda participated in a summer stock engagement in Rochester, New York, from July 5, 1966, until July 18, 1966. She resided in Rochester during this period of time. Petitioners' diaries do not reflect Linda's presence in Rochester from July 5, 1966, until July 18, 1966. To the contrary, petitioners' diaries contain entries indicating that Linda incurred entertainment expenses in New York City on each day during the period from July 5, 1966, until July 18, 1966, with the exception of July 10 and July 17, 1966. Moreover, Linda was in Sullivan, Illinois, from December 28, 1966, until January 8, 1967. *202 Petitioners' diaries do not reflect Linda's presence in Sullivan, Illinois, 7 during this period. To the contrary, petitioners' diaries indicate that Linda sustained entertainment expenses in New York City on each day during the period from December 28, 1966, until January 8, 1967, with the exception of January 8, 1967. Finally, petitioners retained 62 receipts for 1966 and 51 receipts for 1967 from various restaurants. These receipts indicate the date and amount of the expenditure and verify that the bill was actually paid. None of these receipts, however, contained any data either as to the (names) of the (persons) entertained or as to the business purpose of the purported entertainment expenditures. A comparison of these receipts with correlative entries in petitioners' diaries further illustrates the inexactness of petitioners' diaries. For example, a juxtaposition of individual receipts selected from petitioners' receipts for 1966 and 1967 with the correlative entries in petitioners' diaries discloses the following discrepancies in petitioners' diaries with respect to entertainment expenses incurred by petitioners on the specific dates involved: 8 Comparison of Specific Receipts Retained by Petitioners from
1966 and 1967 with Correlative Entries in Petitioners" Diaries for 1966 and 1967
Entertainment Expenditures
Entertainment Expenditures Reflected in Receipts Reflected in Diaries 1966
Restaurant
Expenditure
01 Date
Restaurant
Expenditure
Jan. 6
Cafe DuSoir
$13.17
Jan. 6
St. Moritz (Bob)
$24.40
Drake Hotel (Linda)
23.20
Jan. 19
Lichee Tree
12.39
Jan. 19
Pierre (Bob)
23.60
St. Regis (Linda)
23.30
Apr. 1
Cafe DuSoir
9.09
Apr. 1
Algonquin (Bob)
24.10
Hilton (Linda)
23.10
July 22
Cafe DuSoir
13.82
July 22
Waldorf (Bob)
24.50
Carlyle (Linda)
24.30
Aug. 31
Cafe DuSoir
16.55
Aug. 31
Colony (Bob)
24.10
Quo Vadis (Linda)
24.10
Nov. 4
Cafe DuSoir
15.49
Nov. 4
Hilton (Bob)
24.10
Essex House (Linda)
24.10
1967
June 2
Sun Luck Imp.
$8.12
June 2
Luchow's (Bob)
$24.10
St. Moritz (Linda)
23.30
June 27
Bank Rest.
14.40
June 27
Essex House (Bob)
23.85
Hilton (Linda)
23.90
Sept. 22
Cafe DuSoir
11.50
Sept. 22
Essex House (Bob)
24.30
St. Moritz (Linda)
24.40
Nov. 3
Steak Casino
14.90
Nov. 3
Flying Tiger (Bob)
23.70
Russian Tea Room
23.70
(Linda)
Nov. 29
Bank Rest.
14.10
Nov. 29
Pierre (Bob)
24.10
Longchamps (Linda)
24.30
Dec. 7
Villa Maria
16.20
Dec. 7
Carlyle (Bob)
24.10
Pete's (Linda)
24.20
*203 10 In addition to the 62 receipts previously referred to as having been retained by petitioners for 1966, petitioners also retained 15 Diners' Card receipts for 1966. A number of these Diners' Card receipts pertained to expenditures incurred by petitioners on various Sundays and, thus, could not be correlated with petitioners' 1966 diaries, since petitioners' diaries indicated that petitioners did not entertain for business purposes on Sundays. However, three of the Diners' Card receipts for 1966 are susceptible of correlation with petitioners' 1966 diaries. Date of Diners' Card Receipt
Restaurant
Amount of Receipt Expenditure Apr. 23, 1966
Giambelli
$107.00
May 20, 1966
Villa Pensa
32.60
July 28, 1966
Peter's Backyard
22.45
The correlating entries in petitioners' 1966 diaries reflected the following recordations for these days: Correlative Dates in Diaries
Restaurant
Amount of Expenditure Reflected in Diaries Apr. 23, 1966
Pete's
$23.90
May 20, 1966
Quo Vadis (Bob)
24.10
May 20, 1966
St. Moritz (Linda)
23.60
July 28, 1966
Hilton (Bob)
24.60
July 28, 1966
Lichee Tree (Linda)
24.30
Petitioners gave a number *204 of parties in 1966 and 1967. With respect to these parties, petitioners' diaries indicate neither the number of persons entertained at any of the parties, nor the business purpose of any of the parties, nor the business relationship to petitioners of those persons 11 entertained. With respect to the purported gift expenditures claimed by petitioners in 1966 and 1967, petitioners' diaries reflect neither the cost nor description of any of the claimed business gifts, nor the dates the gifts were made, nor petitioners' relationship to the recipients of the claimed gifts, nor the business reason motivating the claimed gifts. The majority of the entries in petitioners' diaries for 1966 and 1967 were for amounts less than $25. Bob was aware that documentary evidence was not required for travel and entertainment expenditures of less than $25. Petitioners' attorney prepared petitioners' 1966 and 1967 Federal income tax returns. Petitioners claimed travel, entertainment, and gift expenses in the amounts of $24,709.32 and $24,587.43, respectively, for 1966 and 1967. Petitioners' attorney computed the amount to be deducted as petitioners' travel, entertainment, and gift expenses *205 for 1966 by analyzing petitioners' 1966 check stubs. In computing petitioners' deductible travel, entertainment, and gift expenses for 1966, petitioners' attorney did not consult the expenditures recorded in diary set I, nor did he attempt to correlate the claimed expenses with petitioners' actual receipts. Bob did not receive commissions for securing sponsors for his N.B.C. news broadcasts. N.B.C. employed persons during 1966 and 1967 whose specific function was to provide sponsors 12 for N.B.C.'s various radio and television programs. Bob was not employed by N.B.C. for this latter function. Petitioners claimed wardrobe and wardrobe maintenance expenses in the amounts of $2,357.67 in 1966 and $4,005.35 in 1967. The $2,357.67 amount deducted for 1966 was based on petitioners' check stubs indicating payments to clothing apparel and dry cleaning stores. Petitioners' clothing purchased in 1966 and 1967 was adaptable to general usage as ordinary clothing and the usage of such apparel by petitioners was not restricted to petitioners' business activities. Petitioners claimed cosmetics-beauty parlor expenses in the amounts of $1,686.71 in 1966 and $1,780.17 in 1967. The *206 $1,686.71 amount claimed for 1966 was based on petitioners' check stubs indicating aggregate payments to the following: Salon Debbian
$852.50
Paulding Pharmacy and other drug stores
308.46
J. Fleisher
398.75
Miscellaneous
127.00
The payments to J. Fleisher were for wigs purchased by Linda. Linda did not restrict her usage of these wigs to her business activities, but also used them on personal, nonbusiness occasions. Petitioners' check stubs for 1966 reflect that the aggregate $308.46 paid to Paulding Pharmacy and other drug stores was for the following purposes: 13 Date of check
Amount
Purpose reflected by check stubs Feb. 4, 1966
$45.99
None stated
May 3, 1966
56.30
Drugs
Aug. 9, 1966
77.20
Drugs & cosmetics
Sept. 13, 1966
44.11
Drugs & beauty supplies
Nov. 7, 1966
49.84
Drugs & medicines
Nov. 7, 1966
35.42
None stated
Petitioners claimed no medical and dental expense deduction for 1966. Linda maintained desk calendars for 1966 and 1967. These calendars were apparently either lost, destroyed, or misplaced by Linda. A xeroxed excerpt from her 1966 desk calendar was introduced into evidence. This excerpt *207 revealed neither the (names) of (persons) being entertained by Linda, nor the business purpose of the entertainment expense, nor the business relationship to petitioners of the (persons) being entertained. Petitioners claimed deductible telephone expenses in the amounts of $889.05 in 1966 and $738.84 in 1967. Petitioners' check stubs for 1966 reflect that the $889.05 amount expended for telephone expenses in 1966 consisted of petitioners' answering service and home telephone expenses. Petitioners claimed deductible music and publicity expenses in the amount of $1,691.37 in 1966. The following professional expense deductions claimed by petitioners for 1966 and 1967 were disallowed by respondent: 14 1966
1967 Travel, entertainment, gifts
$24,611.32
$23,337.64
Wardrobe and wardrobe maintenance
2,357.67
4,005.35
Cosmetics and beauty parlor
1,686.71
1,780.17
Music and publicity
767.95
-
Telephone
889.05
738.84
Gifts
-
1,161.79
Total amounts disallowed
$30,312.70
$31,023.79
On September 25, 1970, respondent issued a statutory deficiency notice to petitioners wherein petitioners' Federal income tax liability for 1966 and 1967 was *208 increased to reflect respondent's disallowance of the above-indicated amounts of petitioners' claimed deductions. ULTIMATE FINDINGS OF FACT Petitioners' diaries for 1966 and 1967 did not constitute adequate records for purposes of substantiating their travel, entertainment, and/or gift expenses claimed as deductions for their taxable years 1966 and 1967. Petitioners did not substantiate by "other sufficient evidence" their travel, entertainment, and/or gift expenses claimed as deductions for their taxable years 1966 and 1967. OPINION The issues for disposition are (1) whether petitioners' travel, entertainment, and/or gift expenses claimed as deductions for their taxable years 1966 and 1967 constituted ordinary and necessary business expenses under section 162; (2) whether petitioners have complied with the substantiation 15 requirements of section 274(d) and the accompanying regulations with respect to the claimed travel, entertai-ment, and/or gift expenses; and (3) whether petitioners' wardrobe, wardrobe maintenance, cosmetics, beauty parlor, music, publicity, and telephone expenses disallowed by respondent as deductions for petitioners' taxable years 1966 and 1967 *209 constitute ordinary and necessary business expenses deductible under section 162. Respondent contends that regardless of whether petitioners' travel, entertainment, and/or gift expenses constituted ordinary and necessary business expenses deductible under section 162, petitioners failed to substantiate these expenses by "adequate records" or "other sufficient evidence" and that these expenses must, therefore, be disallowed pursuant to section 274(d) and the accompanying regulations. We fully agree with respondent as to this contention.
Section 274(d) provides that travel, entertainment, and gift expenses are not allowable as deductions unless the taxpayer substantiates, either by adequate records or by other sufficient evidence corroborating his own statement, the essential elements pertaining to the nature and business purpose of the involved travel, entertainment, or gift 16 items. [2]
*210 The terms "adequate" and "sufficient," as used in section 274(d), are vague and require clarification. The Commissioner, pursuant to legislative authorization contained in section 274(h), [3] has promulgated regulations which clarify the meaning of "adequate" and "sufficient" for purposes of the substantiation standards of section 274(d). See section 17 1.274-5(c), Income Tax Regs. [4]
*211 In this context, section 1.274-5(c) (2), Income Tax Regs., provides that a diary account book or other similar record in which the taxpayer records the elements of each travel, entertainment, or gift expenditure contemporaneously 18 with the specific expenditure satisfies the adequate records requirement of section 274(d). This regulation further provides that entries in a contemporaneous diary or account book 19 of $25 or less do not require additional documentary evidence for purposes of section 274(d). See section 1.274-5(c) (2) (iii) (b), Income Tax Regs.
In the instant case, the travel and entertainment entries in petitioners' diaries fail to satisfy the adequate records requirements of section 274(d). Petitioners' diaries are replete with material and egregious discrepancies. [5] Although Bob was in Puerto Rico during the entire period from 20 October 26, 1966, through November 1, 1966, petitioners' diaries not only failed to record this fact but erroneously, if not deliberately, reflected that Bob had incurred restaurant entertainment expenses in New York City for each day with the exception of October 30, 1966, that *212 he was actually in Puerto Rico. Although Linda was in Rochester, New York, during the entire period from July 5, 1966, until July 18, 1966, and in Sullivan, Illinois, during the entire period from December 28, 1966, until January 8, 1967, there is no recording of these facts in petitioners' diaries. Instead, petitioners' diaries reflect that Linda incurred entertainment expenses in New York on each of the days with the exception of July 10 and 17, 1966, and January 8, 1967, that she actually was in Rochester and Sullivan. Finally, petitioners retained a number of Diners' Club receipts for 1966 and other receipts for 1966 and 1967. In each of the numerous instances in which a comparison could be made, the retained receipts were in direct contradiction to correlating entries in petitioners' diaries both *213 as to the the restaurant in which the alleged entertainment expense was sustained and the amount of the alleged expense. Accordingly, in view of (1) the substantial number of inaccurate entries in petitioners' diaries and (2) the fact that Bob testified at trial that the portion of diary set I pertaining to 1966 was not prepared until the early to middle part of 1967, that 21 the portion of diary set I pertaining to 1967 was not prepared until the early to middle part of 1968, and that the entries in diary set II were not prepared until 1970 or later, we are convinced that petitioners' diaries for 1966 and 1967 were not prepared contemporaneously with the purported travel and entertainment expenses incurred by petitioners in those years. Therefore, we hold that petitioners' diaries for 1966 and 1967 do not constitute adequate records for purposes of section 274(d). We recognize that section 1.274-5(c) (3), Income Tax Regs., provides that in the absence of adequate records a taxpayer may alternatively satisfy the corroborative evidence sufficient to support his own detailed statements as to each element of the expenditure that was not substantiated *214 by adequate records. This regulation further provides that where the unsubstantiated element is the cost, time, place or date of the expenditure, "the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element." Petitioners have also failed to satisfy the "sufficient corroborative evidence" requirement of section 1.274-5(c) (3), Income Tax Regs. Petitioners introduced only one witness, i.e., William Cooper, who is Bob's agent, in their attempt 22 to corroborate some of petitioners' entertainment expenses. Cooper specified neither the calendar dates during 1966 and 1967 in which he and Bob had dined together, nor the actual restaurants at which they had dined, nor the actual number of times which Bob had paid for the entire bill, nor the individual or aggregate cost of such meals. Cooper's inability to provide such information precludes any possible allowance of that part of petitioners' entertainment expenses during the years in issue which related to Bob's entertainment of Cooper. Since no other witnesses were *215 introduced by petitioners to support the cost, time, place, or date of petitioners' travel and entertainment expenses purportedly incurred in 1966 and 1967, we have concluded that petitioners did not satisfy the substantiation requirements of section 1.274-5(c) (3), Income Tax Regs. Accordingly, since petitioners have not complied with the substantiation requirements of section 274(d), we hold that petitioners are not entitled to a deduction for their travel and entertainment expenses purportedly incurred in 1966 and 1967. [6] 23 Petitioners apparently contend on brief that petitioners' oral testimony at trial *216 is, per se, sufficient to cure the substantiation defects inherent in their diaries for 1966 and 1967. They support this contention by reference to LaForge v. Commissioner, 434 F.2d 370 (C.A. 2, 1970), reversing in part and affirming in part 53 T.C. 41 (1969). Petitioners' reliance on LaForge is misplaced. In that case the taxpayer, a physician, claimed deductions for business luncheons which he purchased at a hospital cafeteria for residents and interns who assisted him in his hospital rounds. The hospital's cashier gave testimony at trial which substantiated the taxpayer's contentions. In partially reversing the Tax Court's decision, the Second Circuit held that, although the taxpayer did not maintain adequate records of his luncheon entertainment expenses, the taxpayer's testimony estimating the amount of these expenses, in conjunction with the cashier's testimony, was sufficient to substantiate the deduction. Accordingly, under the rationale of LaForge, a taxpayer's oral testimony, when supported by "other corroborative evidence," is sufficient to satisfy section 274(d)'s substantiation requirements. See Norman E. Kennelly, 56 T.C. 936 (1971), *217 affd. 456 F.2d 1335 (C.A. 2, 1972); see also the current version of section 1.274-5(c) (3), Income Tax Regs., which reflects the influence of the Second Circuit's decision in LaForge. 24 Contrary to the facts in LaForge, petitioners in the instant case have failed to provide the requisite "other corroborative evidence" to support their claimed travel and entertainment expenses for 1966 and 1967. Thus, under LaForge, petitioners' claim for these expenses was properly disallowed. With respect to petitioners' claimed deductions for gift expenses in 1966 and 1967, petitioners have again failed to satisfy the substantiation requirements of section 274(d) and the accompanying regulations. The only evidence introduced by petitioners pertaining to this item was petitioners' check stubs for 1966. The check stub entries for 1966 did not describe any of the gifts, nor did they detail either the business purposes of the gifts or the business relationship of the gift recipients to petitioners. Therefore, since no other corroborative evidence was introduced to substantiate petitioners' gift expenses for 1966, we hold that petitioners did not comply *218 with the substantiation requirements of section 274(d) with respect to their 1966 gift expenses, and that these expenses are accordingly not allowable. Moreover, since petitioners introduced no evidence with respect to their 1967 gift expenses, their failure to comply with section 274(d) will also preclude the deduction of the gift expenditures for 1967. With respect to the wardrobe, wardrobe maintenance, cosmetics, beauty parlor, music, publicity, and telephone 25 expenses for 1966 and 1967, respondent contends that the disallowed portion of these expenses constituted nondeductible, personal expenses pursuant to section 262. We agree. Petitioners have the burden of proving that respondent's deficiency determination is incorrect. Rule 32 of the Rules of Practice, United States Tax Court; Welch v. Helvering, 290 U.S. 111 (1933); and Flomarcy Company, Inc. v. Commissioner, 324 F.2d 730 (C.A. 2, 1963), AFFIRMING a Memorandum Opinion of this Court. Petitioners have not satisfied their burden. With respect to the claimed wardrobe and wardrobe maintenance expenses, it is clear that the purchase of clothing, and the maintenance of such clothing, *219 constitute deductible expenses under section 162 only when such clothing (1) is required as a condition of the taxpayer's employment and (2) is not adaptable to general usage as ordinary clothing. Donnelly v. Commissioner, 262 F.2d 411 (C.A. 2, 1959), affirming 28 T.C. 1278 (1957); Betty Lusk Yeomans, 30 T.C. 757 (1958); and Louis Drill, 8 T.C. 902 (1947). Petitioners have not established that any of the disallowed clothing expenses were incurred for clothing items that were not adaptable to general usage as ordinary clothing. The only evidence introduced by petitioners in this regard was statements at trial (1) by Bob that he would not wear his part of such clothing for social occasions and (2) by Linda that she did not consider her part of such clothing as 26 adaptable to general usage. We are not persuaded by this selfserving, uncorroborated testimony. Bob's testimony merely establishes that he personally did not choose to wear his business clothing for social or general purposes; this does not establish that his business clothing was not actually adaptable for general usage. Linda's testimony, on the other hand, provides *220 no basis for her conclusion as to the nonadaptability for general usage of such clothing. There is no evidence to indicate that her part of such clothing was either unstylish, or unsuitable for New York's climatic conditions, or too expensive or inexpensive. Accordingly, we hold that petitioners are not entitled to deduct under section 162 the claimed wardrobe and wardrobe maintenance expenses for 1966 and 1967. Regarding petitioners' claimed cosmetics and beauty parlor expenses for 1966 and 1967, these are potentially dual-purpose items in the sense that they could have been sustained for both personal and business purposes. In Leonard F. Cremona, 58 T.C. 219 (1972), (ON APPEAL CA-3, Dec. 27, 1972), Judge Tannenwald stated in his concurring opinion that "[i]n the case of dual- or multiple-purpose expenditures, the presence of a direct relationship and a dominant or primary motive would be the critical factors." Leonard F. Cremona, supra, at 223. Accordingly, petitioners would be entitled to these claimed expenses only if they 27 could prove that the primary or dominant purpose(s) motivating these expenses was business-related. Petitioners have *221 not proved in the slightest degree that the cosmetics and beauty parlor expenses were primarily motivated by business considerations. We therefore hold that petitioners were not entitled to deduct these expenses in 1966 and 1967. Petitioners' check stubs for 1966 reflect that the checks made out to Paulding Pharmacy and otherdrug stores were generally for drugs and cosmetics.Petitioners introduced no evidence to establish either (1) that they were required to purchase such specialized items as theatrical makeup or (2) that the durgs and cosmetics were used primarily for business and not personal purposes. Therefore, we have concluded that petitioners have not established that the drug and cosmetic expenditures were incurred primarily for business purposes. We thus hold that petitioners' deduction of these expenditures in 1966 and 1967 was properly disallowed by respondent. Moreover, there is no evidence to establish that Linda's beauty parlor expenses were primarily motivated by business considerations. There is no indication that she would have gone to the beauty parlor less but for her business activities. Therefore, we are unable to determine whether these beauty parlor *222 expenses were incurred primarily because of business considerations or primarily because of Linda's pride in her personal appearance. Accordingly, we hold that petitioners 28 were not entitled to deduct these expenses for 1966 and 1967. With respect to Linda's wigs, Linda testified at trial that she used these wigs for business and nonbusiness purposes. We recognize that in Reginald Denny, 33 B.T.A. 738 (1935), this Court permitted a male taxpayer-actor to deduct as a business expense the cost of wigs used by him in theatrical productions. However, there is no indication that the taxpayer in Denny used the wigs for personal as well as business purposes. We believe that Linda's usage of her wigs for both business and nonbusiness purposes distringuishes the instant case from Denny. Thus, we have concluded that petitioners have not proved that Linda's dominant, primary motive in acquiring the wigs was attributable to her business activities. We therefore hold that petitioners were not entitled to a deduction for this item in 1966. With respect (1) to the disallowed portion of petitioners' claimed deductions for music and publicity expenses in 1966 and (2) to *223 petitioners' claimed telephone expenses for 1966 and 1967, petitioners have not established that these expenditures were incurred primarily for business considerations. Thus, we hold that petitioners are not entitled to a deduction in excess of the amounts allowed by respondent for these items during the years in issue. Decision will be entered for the respondent. Footnotes
1. All statutory references hereinafter are to the Internal Revenue Code of 1954, unless otherwise indicated. ↩
2. Sec. 274 (d) provides as follows: (d) Substantiation required. - No deduction shall be allowed - (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary or his delegate may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations. ↩
3. (h) Regulatory Authority. - The Secretary or his delegate shall prescribe such regulations as he may deem necessary to carry out the purposes of this section, including regulations prescribing whether subsection (a) or subsection (b) applies in cases where both such subsections would otherwise apply. ↩
4. Sec. 1.274-5(c) (2). Substantiation by adequate records - (i) In general. To meet the "adequate records" requirements of section 274(d), a taxpayer shall maintain an account book, diary, statement of expense or similar record (as provided in subdivision (ii) of this subparagraph) and documentary evidence (as provided in subdivision (iii) of this subparagraph) which, in combination, are sufficient to establish each element of an expenditure specified in paragraph (b) of this section.It is not necessary to record information in an account book, diary, statement of expense or similar record which duplicates information reflected on a receipt so long as such account book and receipt complement each other in an orderly manner. (ii) Account book, diary, etc. An account book, diary, statement of expense or similar record must be prepared or maintained in such manner that each recording of an element of an expenditure is made at or near the time of the expenditure. (a) Made at or near the time of the expenditure. For purposes of this section, the phrase "made at or near the time of the expenditure" means the elements of an expenditure are recorded at a time when, in relation to the making of an expenditure, the taxpayer has full present knowledge of each element of the expenditure, such as the amount, time, place and business purpose of the expenditure and business relationship to the taxpayer of any person entertained. An expense account statement which is a transcription of an account book, diary, or similar record prepared or maintained in accordance with the provisions of this subdivision shall be considered a record prepared or maintained in the manner prescribed in the preceding sentence if such expense account statement is submitted by an employee to his employer or by an independent contractor to his client or customer in the regular course of good business practice. (b) Substantiation of business purpose. In order to constitute an adequate record of business purpose within the meaning of section 274(d) and this subparagraph, a written statement of business purpose generally is required. However, the degree of substantiation necessary to establish business purpose will vary depending upon the facts and circumstances of each case. Where the business purpose of an expenditure is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required. * * * (c) Confidential information. * * * (iii) Documentary evidence. Documentary evidence, such as receipts, paid bills, or similar evidence sufficient to support an expenditure shall be required for - (a) Any expenditure for lodging while traveling away from home, and (b) Any other expenditure of $25 or more, except, for transportation charges, documentary evidence will not be required if not readily available, provided, however, that the Commissioner, in his discretion, may prescribe rules waiving such requirements in circumstances where he determines it is impracticable for such documentary evidence to be required. Ordinarily, documentary evidence will be considered adequate to support an expenditure if it includes sufficient information to establish the amount, date, place, and the essential character of the expenditure. * * * (iv) Retention of documentary evidence. * * * (v) Substantial compliance. * * *
(3) Substantiation by other sufficient evidence. If a taxpayer fails to establish to the satisfaction of the district director that he has substantially complied with the "adequate records" requirements of subparagraph (2) of this paragraph with respect to an element of an expenditure, then, except as otherwise provided in this paragraph, the taxpayer must establish such element - (i) By his own statement in writing containing specific information in detail as to such element; and (ii) By other corroborative evidence sufficient to establish such element. If such element is the description of a gift, or the cost, time, place, or date of an expenditure, the corroborative evidence shall be direct evidence, such as a statement in writing or the oral testimony of persons entertained or other witness setting forth detailed information about such element, or the documentary evidence described in subparagraph (2) of this paragraph. If such element is either the business relationship to the taxpayer of persons entertained or the business purpose of an expenditure, the corroborative evidence may be circumstantial evidence. * * * ↩
5. The gross degree of substantial inaccuracies in petitioners' diaries for 1966 and 1967, in conjunction with Bob's contradictory statements at trial as to the preparation of these diareies, has compelled this Court to conclude that none of Bob's testimony with respect to petitioners' purported travel, entertainment, and gift expenditures for the years in issue is credible. ↩
6. Petitioners attempted to establish at trial the business purpose of the restaurant and social function expenditures purportedly incurred by them during the years in issue. Although we are not convinced that petitioners have proved the business purpose for these expenditures, this query is rendered moot by the fact that petitioners have failed either by adequate records or other sufficient evidence to prove the cost, time, place or date of any part of their travel and entertainment expenses purportedly sustained by them in 1966 and 1967. ↩