T.C. Summary Opinion 2004-74


UNITED STATES TAX COURT


JAMES ALBERT AND BEVERLY ALDERMAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 18818-02S.                    Filed May 26, 2004.


James Albert and Beverly Alderman, pro sese.

<u>Linda J. Wise</u>, for respondent.


WHERRY, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
at the time the petition was filed.[1]  The decision to be entered
is not reviewable by any other court, and this opinion should not
be cited as authority.

---

[1] Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the year in issue,
and Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined a Federal income tax deficiency for petitioners' 2000 taxable year in the amount of $1,642. After concessions, the issue for decision is whether petitioners are entitled to deduct a portion of their transportation costs as a medical expense under section 213.

## Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. During the year 2000 and through the time the petition was filed in this case, petitioners resided in Excel, Alabama.

Petitioner James Albert Alderman (Mr. Alderman) was employed during 2000 as a mathematics teacher at Escambia County Middle School. Escambia County Middle School is located in Atmore, Alabama. Petitioner Beverly Alderman (Mrs. Alderman) was employed in 2000 as a nurse at the Motorola Medical Clinic in Monroeville, Alabama.

Mr. Alderman is sight disabled and does not drive. Due to this disability, Mrs. Alderman drove Mr. Alderman both to and from his job each workday. Atmore is located to the south of Excel, and the distance from petitioners' residence to Mr. Alderman's place of work was approximately 40 to 45 miles. Monroeville is located to the north of Excel, and the distance from petitioners' residence to the clinic where Mrs. Alderman

worked was approximately 7 miles.  Thus, on days both spouses worked, Mrs. Alderman made roughly two round trips to Atmore and one to Monroeville.

Petitioners timely filed a joint Form 1040, U.S. Individual Income Tax Return, for the 2000 taxable year.  They reported wages of $53,854 and a State and/or local income tax refund of $393, for total income and adjusted gross income of $54,247.  Petitioners chose to itemize their deductions and attached a corresponding Schedule A, Itemized Deductions.  The Schedule A reflected total itemized deductions of $18,844, which amount included a deduction for medical and dental expenses of $5,796 (computed by applying the 7.5 percent of adjusted gross income limitation to total reported medical and dental expenses of $9,865).  The return then showed taxable income, after subtracting itemized deductions ($18,844) and two exemptions ($5,600), of $29,803; tax of $4,474; withholding of $6,201; and a refund amount due of $1,727.

On September 9, 2002, respondent issued to petitioners a statutory notice of deficiency for the year 2000.  Respondent determined therein that petitioners failed to report the taxable portion of Social Security income received by Mr. Alderman.  The notice also made correlative adjustments to petitioners' itemized deductions based on the increased adjusted gross income.

Petitioners filed a timely petition challenging the notice of deficiency. They included an explanation of their disagreement referencing Mr. Alderman's "inability to drive due to a sight disability" and stating: "I claimed that a normal commute was not deductible but that amount I payed [sic] above a normal commute should be."

Prior to trial, petitioners conceded the adjustment made in the notice of deficiency to include the taxable portion of Mr. Alderman's Social Security income. Also, although petitioners during trial preparation raised an issue of petitioners' entitlement to additional employee business expense deductions for professional dues and educational expenses, they ultimately elected to litigate only the deductibility of costs related to Mr. Alderman's transportation to work.

## Discussion

### I. Burden of Proof

As a general rule, determinations by the Commissioner are presumed correct, and the taxpayer bears the burden of proving otherwise. Rule 142(a). Section 7491 may operate, however, in specified circumstances to place the burden on the Commissioner. Section 7491 is applicable to court proceedings that arise in connection with examinations commencing after July 22, 1998, and reads in pertinent part:

SEC. 7491. BURDEN OF PROOF.

(a) Burden Shifts Where Taxpayer Produces Credible Evidence.--

(1) General rule.--If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

(2) Limitations.--Paragraph (1) shall apply with respect to an issue only if--

(A) the taxpayer has complied with the requirements under this title to substantiate any item;

(B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews; * * *

See also Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727, regarding effective date.

Section 7491 applies here in that the examination of a 2000 tax return began after the statute's effective date. However, legislative history makes clear that the burden will be shifted to the Commissioner under the statute only in cases where the taxpayer establishes that he or she meets the prerequisites set forth in section 7491(a)(2). H. Conf. Rept. 105-599, at 239-242 (1998), 1998-3 C.B. 747, 993-996.

With respect to the instant matter, petitioners have neither raised any argument with respect to a shift of burden under section 7491 nor shown that they complied with the threshold elements therefor. Notably, in this proceeding they have offered no or negligible documentary evidence pertaining to the specifics of Mr. Alderman's transportation to and from work (e.g., mileage, days of attendance, etc.). In addition, petitioners have represented in communications submitted to the Court that records related to petitioners' 2000 return were lost or misplaced in conjunction with a mortgage refinancing. The Court concludes on this record that the burden of proof remains on petitioners.

## II. Deduction Under Section 213

### A. General Rules

As a general rule, section 262(a) precludes any deduction "for personal, living, or family expenses." Historically, the cost of commuting to and from a taxpayer's place of employment has long been recognized as a nondeductible personal expense. Commissioner v. Flowers, 326 U.S. 465, 472-473 (1946); Donnelly v. Commissioner, 262 F.2d 411, 412-413 (2d Cir. 1959), affg. 28 T.C. 1278 (1957); Buck v. Commissioner, 47 T.C. 113, 119 (1966); see also sec. 1.262-1(b)(5), Income Tax Regs. ("taxpayer's costs of commuting to his place of business or employment are personal expenses and do not qualify as deductible expenses").

Section 213 carves out of the rule of section 262 a limited exception for medical expenses, providing as follows in relevant part:

SEC. 213.   MEDICAL, DENTAL, ETC., EXPENSES.

(a) Allowance of Deduction.--There shall be allowed as a deduction the expenses paid during the taxable year, not compensated for by insurance or otherwise, for medical care of the taxpayer, his spouse, or a dependent (as defined in section 152), to the extent that such expenses exceed 7.5 percent of adjusted gross income.

*     *     *     *     *     *     *

(d) Definitions.--For purposes of this section--

(1) The term "medical care" means amounts paid--

(A) for the diagnosis, cure, mitigation, treatment, or prevention of disease, or for the purpose of affecting any structure or function of the body,

(B) for transportation primarily for and essential to medical care referred to in subparagraph (A),

(C) for qualified long-term care services (as defined in section 7702B(c)), or

(D) for insurance (including amounts paid as premiums under part B of title XVIII of the Social Security Act, relating to supplementary medical insurance for the aged) covering medical care referred to in subparagraphs (A) and (B) or for any qualified long-term care insurance contract * * * [2]

---

[2] The definitions presently codified in sec. 213(d) were formerly contained in sec. 213(e), which was redesignated for

(continued...)

Regulations promulgated under section 213 caution that medical expense deductions should be "confined strictly to expenses incurred primarily for the prevention or alleviation of a physical or mental defect or illness." Sec. 1.213-1(e)(1)(ii), Income Tax Regs. Caselaw interprets this stricture with the similar pronouncement that the expenses for which a deduction is sought "must be for goods or services directly or proximately related to the diagnosis, cure, mitigation, treatment, or prevention of the disease or illness." Jacobs v. Commissioner, 62 T.C. 813, 818 (1974); see also Gerstacker v. Commissioner, 414 F.2d 448, 450 (6th Cir. 1969), revg. and remanding 49 T.C. 522 (1968); Havey v. Commissioner, 12 T.C. 409, 412 (1949). An incidental relationship to health, bodily condition, or medical care is insufficient. Havey v. Commissioner, supra at 413.

This Court has established a two-pronged, "but for" test in determining whether expenses were directly or proximately related to treatment of a medical condition: The taxpayer must prove that (1) the expenditures were an essential element of the treatment for the condition, and (2) the expenditures would not have otherwise been incurred for nonmedical reasons. Jacobs v.

---

[2](...continued)
years beginning after Dec. 31, 1983. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 202(b)(3)(B), (c)(2), 96 Stat. 421. Where appropriate based on the context in which used, we shall treat references by petitioners to sec. 213(e) as references to current sec. 213(d).

<u>Commissioner</u>, <u>supra</u> at 819.  Relevant factors in evaluating these elements include the motive or purpose of the taxpayer in making the expenditure, the effect of the purchased goods or services on the condition, and the origin of the expense.  <u>Id.</u>; <u>Havey v. Commissioner</u>, <u>supra</u> at 412.

B.  <u>Contentions of the Parties</u>

Respondent interprets the above authorities to preclude deduction of any portion of the costs incurred in transporting Mr. Alderman to and from work as personal commuting expenses under section 262.  Petitioners, in contrast, maintain that at least some part of the costs associated with the intermediate round trip made by Mrs. Alderman between the workplaces of the two spouses constitutes a deductible medical expense under section 213.[3]  They seek a deduction computed in accordance with the standard mileage rate established by the Commissioner. Petitioners' argument is summarized on brief as follows:

---

[3] Sec. 213 is the sole statutory basis argued by petitioners on brief in support of the deductibility of the transportation costs in dispute.  To the extent that previous statements made or documents submitted by petitioners raised an issue of deductibility as a business expense under sec. 162, this issue is deemed to have been abandoned or conceded.  See, e.g., Rule 151(e)(4) and (5); <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370 (1993); <u>Petzoldt v. Commissioner</u>, 92 T.C. 661, 683 (1989); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 n.19 (1988).  In any event, the shortcomings in substantiation discussed <u>infra</u> in text would preclude deduction as sec. 162 expenses under the pertinent strict substantiation rules of sec. 274 and accompanying regulations. We further note that petitioners never raised any argument pertaining to sec. 67(b)(6) and (d).

> when any cost exceeds that of a normal counterpart, and
> that cost is solely for the mitigation or alleviation
> of a disability and one that provides functionality to
> the disabled, this above normal cost is deductible as a
> medical expense confined to the limitation that its
> primary function is not that of normal and ordinary to
> and from work travel when the principles of this type
> of deductibility cost are applied in this area. * * *

Based on this and similar statements, it appears to be
petitioners' position that the "above normal" costs incurred by
disabled individuals to obtain a commensurate level of
functionality with those taxpayers unaffected by such a
disability should be characterized as directly and proximately
related to medical treatment within the meaning of section 213.

    C.  <u>Analysis</u>

      1.  Standard for Deduction

While the Court is sympathetic to petitioners' cause, there
exist multiple difficulties with respect to the deductibility of
petitioners' transportation expenses.  As an initial matter, the
standard they suggest premised on "above normal" costs would
appear not to comport with existing precedent under section 213.

Courts have on several occasions considered the
deductibility under section 213 of costs incurred in getting to
and from work by taxpayers suffering from disabling medical
conditions.  For instance, in the early case <u>Donnelly v.
Commissioner</u>, 262 F.2d at 412, the taxpayer, a victim of
infantile paralysis and abdominal cancer, could not use public
transportation and drove a specially designed automobile to work.

The Court of Appeals for the Second Circuit concluded that "the costs of operating an automobile to and from work cannot be contained in the statutory definition of 'medical care'".  Id. at 413.  As explained by the Court of Appeals, an indirect medical benefit did not make a personal expense deductible because the statute was limited to those expenses "primarily incurred for medical care."  Id.  This Court's decision below had likewise reasoned that the taxpayer's costs were, "in essence, nothing more than commuter's expenses which are personal in nature" and thus failed to qualify under the statute, as follows:

> [The taxpayer] argues that braces and crutches are deductible as medical expenses and therefore the costs of his special automobile should also be deductible because he uses the latter as a substitute for the former.  The petitioner's argument, however, ignores the fact that his automobile expenses, unlike the expense of braces and crutches, do not represent expenses incurred primarily for the alleviation of a physical defect or illness, which is a requirement for deductibility * * * [Donnelly v. Commissioner, 28 T.C. at 1279-1280.]

This Court applied similar logic in Buck v. Commissioner, 47 T.C. 113 (1966), and Goldaper v. Commissioner, T.C. Memo. 1977-343.  The taxpayer in Buck v. Commissioner, supra at 116, was subject to epileptic seizures and advised by his physician not to drive.  He hired a chauffeur to transport him to work.  Id.  The Court held that the employment of the chauffeur "to drive petitioner to and from his places of business was a matter of petitioner's own personal choice, comfort, and convenience and

was not 'primarily for or essential to' medical care"; rather, the salary paid to the chauffeur was "in the nature of commuting expenses" and was not deductible.  Id. at 119.  The analogous scenario in Goldaper v. Commissioner, supra, involved a taxpayer with vision problems, similar to Mr. Alderman, who could not obtain a driver's license and was advised by his doctor not to use public transportation.  We again held that the cost of hiring a professional driver for transportation to and from work was nondeductible under section 213 in that "the primary reason for petitioner's use of a professional driver was the personal reason of commuting to and from work."  Id.

One further example is afforded by Ginsberg v. United States, 237 F. Supp. 968, 969 (S.D.N.Y. 1964), where the taxpayer suffered from chronic osteomyelitis of the leg.  His physician advised against prolonged walking or standing and in favor of using an automobile to prevent future attacks or aggravation of the condition.  Id.  On these facts, the court concluded that "use of the vehicle will probably mitigate aggravation of the taxpayer's condition.  Nevertheless, the expense of using an automobile for commutation to work and pleasure is not primarily incurred for medical care where the employment is not prescribed as therapy."  Id. at 970.

In contrast, the only cases in which deduction under section 213 has been permitted for costs incurred for transportation to

and from work are those where the employment itself is explicitly prescribed as therapy to treat a medical condition. Weinzimer v. Commissioner, T.C. Memo. 1958-137; Misfeldt v. Kelm, 44 AFTR 1033, 52-2 USTC par. 9495 (D. Minn. 1951).

Notably, the taxpayers in the majority of the above cases involving denial of deductions likely could have argued that they incurred costs in getting to work above those that would have been required absent their disabling condition. They further would probably have been in a position to assert that the effect of the additional expenditures was to enable them to obtain a level of functionality on par with that of unimpeded individuals. Petitioners attempt to distinguish such cases with the statement that "no specific facts [sic?] costs were incurred that either were not an elected option by the taxpayer or costs that would occur normally within the course of an ordinary commute." Hence, petitioners apparently argue that these taxpayers, unlike themselves, incurred no legitimate "above normal" costs. We, however, perceive no meaningful distinction.

Petitioners elected to convey Mr. Alderman to work by having Mrs. Alderman drive him. This option was selected in lieu of other potential options, such as having Mr. Alderman call a taxicab, hire a driver, use public transportation, join a carpool, etc. Many of these options would clearly have generated costs nondeductible under the above judicial precedent. Some of

the options would probably have resulted in greater expense to petitioners, while some might have reduced petitioners' outlay. Merely because petitioners' chosen arrangement enables them to specifically identify an "extra" commute made to accommodate Mr. Alderman's disability should not render their alleged "above normal" costs any more legitimate for section 213 purposes than those necessitated by other alternatives.

Regardless of the transportation method selected, the primary and fundamental underlying purpose for the costs incurred in petitioners' situation was to get Mr. Alderman to and from work, not to treat his medical condition. The cases are unanimous in holding that such costs are personal, nondeductible, commuting expenses. Stated otherwise, the costs of transportation to and from work are not directly and proximately related to medical care where employment is not prescribed as therapy and thus do not satisfy the "but for" test applied under section 213.

Petitioners' circumstances illustrate this shortcoming. As previously indicated, the "but for" test requires that (1) the expenditures were an essential element of the treatment for the condition, and (2) the expenditures would not have otherwise been incurred for nonmedical reasons. Jacobs v. Commissioner, 62 T.C. at 819. Working, though admirable, was not an essential part of Mr. Alderman's prescribed treatment, and there has been

no showing that equivalent costs would not have been incurred for nonmedical reasons. Even absent Mr. Alderman's sight disability, an identical scenario could have ensued if the spouses owned only one car. Moreover, two cars might not have reduced overall expenses in light of the outlays for the second automobile, insurance, taxes, tags, licenses, maintenance, and repairs. Thus, while the Court sympathizes with the hardships experienced by petitioners in enabling Mr. Alderman to engage in his important work as a math teacher, allowing a medical expense deduction in these circumstances would be contrary to the applicable section 213 rules.[4]

---

[4] Having obviously expended significant time and effort researching the issue, petitioners on brief cite a number of revenue rulings, e.g., Rev. Rul. 83-33, 1983-1 C.B. 70; Rev. Rul. 71-48, 1971-1 C.B. 99; Rev. Rul. 70-606, 1970-2 C.B. 66; Rev. Rul. 67-76, 1967-1 C.B. 70; and Rev. Rul. 66-80, 1966-1 C.B. 57, as well as others. However, all of these rulings appear to be consistent with the above-discussed standards, most deal with issues involving the deductibility of various capital expenditures, and none hold or suggest that the costs of commuting to and from an individual's place of business should qualify under sec. 213. For instance, Rev. Rul. 66-80, supra, 1966-1 C.B. 57, sanctioned deduction of costs for equipment to adapt an automobile for handicapped use but warned:

> However, irrespective of the physical condition of the individual, the costs of operating the automobile, as a means of transportation that is not primarily for and essential to medical care, are not allowable medical expense deductions within the limitations of section 213 of the Code. For example, costs of commuting to or from the individual's place of business or employment are nondeductible personal expenses. * * *

(continued...)

2.  Substantiation of Deduction

A second difficulty with petitioners' position here is that the record before us falls short of providing any adequate substantiation for petitioners' costs in this case.  Deductions are a matter of "legislative grace", and "a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934); see also Rule 142(a).

Any amount claimed as a deductible expense must be substantiated, and taxpayers are clearly required to maintain adequate records sufficient to meet this requirement.  Sec. 6001; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. 540 F.2d 821 (5th Cir. 1976); sec. 1.6001-1(a), Income Tax Regs. When a taxpayer adequately establishes that he or she paid or incurred a deductible expense but does not establish the precise amount, we may in some circumstances estimate the allowable deduction, bearing heavily against the taxpayer whose inexactitude is of his or her own making.  Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930).  There must, however, be sufficient evidence in the record to provide a basis upon which

---

[4](...continued)
Likewise, Rev. Rul. 67-76, supra, 1967-1 C.B. 70, allowed a medical expense deduction for the purchase of a three-wheeled "autoette", stating that the taxpayer "uses it primarily for the alleviation of his sickness or disability and not merely to provide transportation between his residence and place of employment".

an estimate may be made and to permit us to conclude that a deductible expense, rather than a nondeductible personal expense, was incurred in at least the amount allowed.  <u>Williams v. United States</u>, 245 F.2d 559, 560 (5th Cir. 1957); <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 742-743 (1985).[5]

The record before us is rife with inconsistencies as to nearly every element that would be germane to our ability to determine or estimate the amount of any deductible expenses for Mr. Alderman's transportation.  We first consider mileage.  At trial, Mr. Alderman testified that the distance between petitioners' residence and his place of work was 45 miles, between his work and Mrs. Alderman's work was 55 miles, and between Mrs. Alderman's work and their residence was 7 miles.  He

---

[5] In written communications with the Court, petitioners indicate some disagreement between the parties regarding our authority to estimate deductible expenses.  Petitioners imply that the extent of this authority may have been misrepresented by respondent, thereby influencing petitioners' choice to forgo particular arguments.  Petitioners cite <u>Maher v. Commissioner</u>, T.C. Memo. 2003-85, for the proposition that "the court estimated an expense not documented monetarily but was physically proven to have been incurred."  While we regret any misunderstanding that may have ensued between the parties, we clarify that petitioners' reading of <u>Maher v. Commissioner</u>, <u>supra</u>, would appear to be overly broad.  Specifically, the evidence in that case established a specific total amount paid by Mr. Maher for automobile insurance.  <u>Id.</u>  Based on the record presented, this Court was then able to estimate the percentage of that insurance attributable to Mrs. Maher's use of the automobile(s) and consequently deductible as alimony.  <u>Id.</u>  <u>Maher v. Commissioner</u>, <u>supra</u>, however, does not permit the Court to estimate the deductible portion of an expense when there is no documentary or other credible evidence in the record establishing the total expense incurred.

further indicated that 90 miles per day was the portion for which petitioners sought a deduction.

On brief, petitioners open by stating that all mileage discussed therein is subject to an additional 5 miles depending upon the route available and that the quoted figures are "the lesser mileage." They then proceed to describe the distance between petitioners' residence and Mr. Alderman's employment in Atmore as "some 40 miles" and between Mr. Alderman's work and that of Mrs. Alderman in Monroeville as "some 50 miles". They ask that 100 miles per day for the intermediate commute be treated as a deductible expense.[6]

Difficulties inherent in this state of affairs include the following. Statements made on brief are not evidence and cannot form the basis for this Court's determination. Rule 143(b); Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992). Furthermore, the "some" language used by petitioners on brief, not to mention the round numbers, indicates that these figures are themselves only estimates. More importantly, the numbers used in petitioners' brief do not take into account or compensate for the two 7-mile portions, discussed at trial, that would be necessitated by Mrs. Alderman's own commute. At the same time,

---

[6] We note that petitioners failed to use a consistent numbering scheme in identifying and discussing the various segments of their commute within their opening brief and between their opening and reply briefs. Where appropriate, we have used context to take into account any resultant discrepancies.

the 40- and 50-mile figures given on brief imply either that this leg of the journey required 10 rather than 7 miles or that petitioners' statement that quoted figures use "the lesser mileage" in the case of alternate routes is in fact inaccurate.

The situation with respect to the number of days of pertinent travel is similar. At trial Mr. Alderman testified that he "did not miss a day during the year 2000" and was seeking a deduction for the "182-day school year". However, exhibits introduced by petitioners include a copy of a leave request granting Mr. Alderman professional leave for March 16 and 17, 2000, and a copy of a certificate of attendance and participation at a teaching conference held in Mobile, Alabama, during March 16 through 18, 2000. On brief petitioners then calculate their alleged deductible expenditures based on 94 days, apparently computed as the total of one-half of a 180-day school year plus one-half of 8 parent conference or Parent Teacher Organization meeting days. There is no explanation whatsoever for the dramatic reduction in alleged workdays. There also has been no showing that Mrs. Alderman worked every day that Mr. Alderman did and that their schedules and hours invariably coincided in the manner generally described at trial and on brief.[7]

---

[7] The Court has considered a variety of possible factual scenarios in an attempt to reconcile petitioners' statements on brief, including their acknowledgment that a portion of their travel constitutes a nondeductible "normal commute", with the

(continued...)

Consequently, while we cannot rely on petitioners'
statements on brief as evidence in this proceeding, the
inconsistencies between and among the remarks therein and the
testimony and exhibits offered at trial, which are evidence, call
into question the accuracy and reliability of the pertinent
evidentiary material.  No documentary evidence supporting either
the mileage figures or the workdays has ever been submitted.  On
this record of apparent estimates, unexplained inconsistencies,
and silence on relevant facts, any further estimate by the Court
would lack a reasonable foundation.  Hence, we are unable to form
a rational basis upon which to apply even the applicable standard
mileage rate.[8]

A further difficulty with permitting petitioners to claim a
medical expense deduction for the costs of transporting
Mr. Alderman to work is that the record fails to establish that

---

[7](...continued)
testimony and exhibits introduced at trial.  We nonetheless have
been unable rationally to explain the discrepancies.  For
instance, even considering the difference between a calendar year
and a typical school year does not appear to account for the 94-
day period cited by petitioners.  The exhibits introduced by
petitioners showing Mr. Alderman's attendance at professional
development events date from August of 1999 through February of
2001, and thus would seem to indicate employment during both the
1999-2000 and the 2000-2001 school years.

[8] We note that, pursuant to Rev. Proc. 99-38, 1999-2 C.B.
525, the standard mileage rate for computing deductible medical
expenses for the year 2000 was 10 cents per mile.  Petitioners,
inconsistent with their substantive argument, use 32.5 cents per
mile, the rate specified in the revenue procedure for business
expense deductions, in certain calculations.

no part of these costs was incorporated into the $9,865 in medical expenses reflected on petitioners' Schedule A for 2000. The evidence is devoid of any information as to the source of the reported figure.

In conclusion, we hold that petitioners are not entitled to any additional deduction for costs incurred in transporting Mr. Alderman to and from his place of employment. To reflect the foregoing and concessions made,

<u>Decision will be entered for respondent</u>.